# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COALITION FOR GREEN CAPITAL, <br><br> *Plaintiff*, <br><br> -against- <br><br> CITIBANK, N.A., <br><br> *Defendant*. | Civil Action No. 1:25-cv-1964 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Coalition for Green Capital ("CGC" or "Plaintiff"), by and through its undersigned counsel, as and for its complaint against Citibank, N.A. ("Citi" or "Defendant"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for breach of contract, conversion, and replevin against Citi arising from Citi's refusal to adhere to account agreements that mandate Citi's compliance with the instructions of the account holders, including CGC—on the apparent basis that Citi is supposedly "working with" government officials looking to unlawfully claw back federal grant funds that were already disbursed and are now in bank accounts at Citi.

2. CGC is the recipient of a $5 billion grant awarded by the EPA in April 2024 under EPA's National Clean Investment Fund ("NCIF") program, and obligated by the EPA pursuant to a grant agreement in August 2024, under a duly enacted congressional statute. *See* 42 U.S.C. § 7434. The EPA obligated the grant so that CGC would invest in qualified projects and support the creation of a self-sustaining nationwide network of state and local green banks, community lenders, and community partners to drive the deployment of qualified projects in or benefiting low-income and disadvantaged communities across the United States. The grant allowed CGC to work with "subrecipients" (or "Subgrantees"), to whom it would disburse "subgrants."

3. CGC's NCIF grant has supercharged its longstanding mission to cultivate a truly nationwide network of partnerships with state and local communities to build advanced energy infrastructure, and unlock private sector investment. CGC's Subgrantees are located across the country—in Florida, Michigan, Ohio, Missouri, California, Maine, Maryland, Delaware, Illinois, Connecticut, Minnesota, Colorado, New York, New Jersey, and D.C. These projects have the potential to create hundreds of thousands of well-paid American jobs, all while improving air and water quality and reducing greenhouse gas emissions across the country.

4. In line with arrangements followed by the federal government for decades, the government disbursed the funds to custodial accounts at Citi under a Financial Agent Agreement ("FAA"), dated September 19, 2024. Citi agreed in an Account Control Agreement (or "ACA") with CGC and the EPA that it would hold CGC's funds. In that ACA, Citi further agreed that it would "comply with all instructions" received from CGC, the holder of the Accounts, "directing the disposition of funds and financial assets in [CGC's] Accounts," with <u>only one exception</u>—*i.e.*, if the EPA issued a "Notice of Exclusive Control" determining in writing that there had been waste, fraud, material misrepresentation of eligibility status, or abuse, *and* initiated a remedial action under the federal financial assistance regulations.

5. Citi entered into similar account control agreements (the "Subgrantee ACAs," and each a "Subgrantee ACA") with CGC and CGC's Subgrantees, agreeing to abide by the instructions of CGC's Subgrantees directing the disposition of funds and financial assets in their accounts with Citi unless CGC, in its capacity as a secured party, itself issued a Notice of Exclusive Control and, again, funds were disbursed to those accounts in reliance on the contracts.

6. The EPA explicitly contemplated and negotiated the structure of the FAA, ACA, and Subgrantee ACAs from the inception of the NCIF program so as to allow the EPA to exercise

"control" as a secured party under the ACA. This arrangement—including the specific use of an FAA—was designed to support the EPA's interests and ensure full transparency and accountability, while permitting capitalization of the grant recipients consistent with the objectives of the NCIF program.

7. The ACAs are hardly a blank check to CGC—its Accounts at Citi are not structured like an ordinary checking account to be drawn from at will. CGC's instructions to Citi regarding the disposition of funds and financial assets in its Accounts must comply with not only the ACA, but also CGC's other contractual obligations, including its Grant Agreement and the Terms and Conditions of the NCIF program, as well as specified reporting requirements, ensuring that EPA is fully aware of all account activities.

8. On February 12, 2025, Lee Zeldin, the newly appointed administrator of the EPA, made a public statement on Twitter, now X, announcing EPA's intent to claw back the funds appropriated by Congress, obligated by the EPA in the previous administration, and already disbursed to grantees including CGC. Mr. Zeldin stated that "the financial agent agreement with [Citi] needs to be instantly terminated," that Citi "must immediately return" the funds, and that he would refer the matter "to the Inspector General's Office and will work with the Justice Department."

9. Following those reports, CGC and others grant recipients requested clarity from Citi as to the status of the funds in their Accounts. Since February 18, 2025, however, Citi has provided no information to CGC, ignored requests for information, and refused to comply with instructions regarding the disposition of funds and financial assets in CGC's Accounts that, under the ACAs, require Citi's compliance.

10. Meanwhile, according to press reports,[1] the Office of the Deputy Attorney General, working with the interim U.S. Attorney for the District of Columbia, Ed Martin, sought to open a criminal investigation into whether these grants were lawfully awarded. This precipitated the February 18 resignation of Denise Cheung, then-head of the Criminal Division of the U.S. Attorney's Office for the District of Columbia, who concluded there was insufficient evidence of wrongdoing to commence a grand-jury investigation.

11. According to these reports, on the evening of February 17, 2025, the Washington field office of the FBI issued a letter to Citi "recommending a thirty-day administrative freeze on certain asserts." According to Ms. Chueng's resignation letter, Mr. Martin was displeased that the "Freeze Letter" merely "*recommended*" the freezing of assets, and sought to have Ms. Cheung issue a letter "ordering the bank not to release any funds in the subject accounts pursuant to a criminal investigation being run out of USAO-DC." When Ms. Cheung refused to issue such a letter, Mr. Martin asked for her resignation, which she immediately tendered.

12. Mr. Martin reportedly then went on to submit a seizure warrant application to a magistrate judge. That application was reportedly rejected.

13. Much remains unknown to CGC about the reasons why Citi has declined CGC access to the funds in its Accounts and declined Subgrantees' access to their respective accounts and funds. But this much is clear: since February 18, 2025, CGC and its Subgrantees have been unable to access the funds in their Accounts at Citi, thus impairing their ability to carry out their mission in line with Congress's objectives, despite the fact that the EPA has not issued a Notice of Exclusive Control to Citi. Indeed, the EPA could not issue such a notice, because doing so requires both a written finding of waste, fraud, material misrepresentation of eligibility status, or

---

[1] *See* https://www.washingtonpost.com/dc-md-va/2025/02/18/read-resignation-letter-denise-cheung/.

abuse (and there is none), as well as the initiation of a formal remedial action under 2 CFR Part 200.

14. On March 6, 2025, undersigned counsel for CGC wrote to Citi seeking to confirm that Citi would comply with all applicable terms of the ACA and comply with the instructions of CGC and its Subgrantees directing the disposition of funds and financial assets in their respective accounts, as it is contractually obligated to do unless and until a Notice of Exclusive Control is issued. As of this filing, Citi has not responded.

15. Still, it became clear that Citi would not comply with CGC's instructions absent a court order, given Citi's public statements issued in response to a lawsuit filed on March 8, 2025 by another NCIF grant awardee, Climate United Fund, which sued Citi, the EPA, and Administrator Zeldin in the District of Columbia. *See Climate United Fund v. Citibank, N.A., et al.*, No. 1:25-cv-00698 (D.D.C.). In a press statement responding to that suit, Citi stated that "Citi has been working with the federal government in its efforts to address government officials' concerns regarding this federal grant program" and further explained that its "role as financial agent does not involve any discretion over which organizations receive grant funds" and it would "of course comply with any judicial decision."[2]

16. CGC now brings this suit to vindicate its right—and its Subgrantees' rights—to direct the disposition of funds and financial assets in their Accounts to which they are lawfully entitled under Citi's account control agreements, directions that Citi is wrongfully and unlawfully failing to comply with, thereby denying CGC access to funds to which it has a property right under its grant agreement and the ACA. Taking another's property has never been justified on the basis that one is "working with" government officials, nor is that a justification for breaching an

---

[2] *See* https://www.nytimes.com/2025/03/08/climate/epa-climate-funds-lawsuit.html.

unequivocal account control agreement that gives Citi no discretion but to comply with the instructions of account holders counting on Citi to adhere to its contractual obligations.

**THE PARTIES**

17. Plaintiff CGC is a nonprofit corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.

18. Defendant Citi is a national banking association organized under the laws of the United States with its main office in South Dakota. It is a citizen of South Dakota for purposes of the federal diversity statute. *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 216 (2d Cir. 2016).

19. Nonparties California Infrastructure and Economic Development Bank; Colorado Clean Energy Fund; The Community Development Venture Capital Alliance; City First Enterprises, Inc.; Connecticut Green Bank; Efficiency Maine Trust; Elemental GG LLC; Green Finance Authority; ICLEI-Local Governments for Sustainability USA; Illinois Finance Authority; Montgomery County Green Bank; Michigan Saves; Minnesota Climate Innovation Finance Authority; Missouri State Environmental Improvement and Energy Resources Authority; New Jersey Green Bank; New York City Energy Efficiency Corporation; NY Green Bank; Ohio Air Quality Development Authority; and Solar and Energy Loan Fund of St. Lucie County, Inc. are the Subgrantees. Each is party to a separate Account Control Agreement with CGC and Citi.

**JURISDICTION AND VENUE**

20. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because Plaintiff and Defendant are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs. CGC is a citizen of the District of Columbia, and Citi is a citizen of South Dakota for purposes of § 1332 because the "main office" listed in its articles of association is there. *See Melina*, 827 F.3d at 216.

21. Venue is proper under 28 U.S.C. § 1391(b)(1), because Citi's principal place of business for venue purposes is in this District (as is Citi's Agency & Trust division, which is responsible for its obligations under the FAA, the ACA, and the Subgrantee ACAs); and under § 1391(b)(2), because the acts or omissions giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**

*The Terms Of The CGC Account Control Agreement*

22. The ACA, dated November 1, 2024, as amended, was executed between CGC, as Pledgor; the EPA, as Secured Party; and Citi, as Bank.

23. The ACA provides in Section 1(a) that Citi "maintains the Accounts for [CGC], and all property (including, without limitation, all funds and financial assets) held by [Citi] for the accounts of [CGC] are, and will continue to be, credited to the Accounts in accordance with the instructions given by [CGC] (unless otherwise provided herein)."

24. Section 2 of the ACA requires Citi to "comply with all instructions, notifications, and entitlement orders [Citi] receives directing the disposition of funds and financial assets in the Accounts including, without limitation, directions to distribute proceeds of any such transfer or redemption of interest or dividends on financial assets in the Accounts, substantially in the form attached hereto . . . , originated by [CGC], until the time that that [Citi] receives a notice . . .

(a 'Notice of Exclusive Control') from [the EPA] that [the EPA] is exercising its right to exclusive control over an Account."[3]

25. In other words, under the ACA, Citi cannot restrict CGC's access to its Accounts unless EPA issues a Notice of Exclusive Control to Citi.

26. The Notice of Exclusive Control must state in writing, in substantially the form provided as Exhibit A to the ACA, that the EPA:

> has issued a written determination finding that [CGC] has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is materially impaired or there is adequate evidence of waste, fraud, material misrepresentation of eligibility status, or abuse, and that [EPA] has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement, as authorized in the terms of the Grant Agreement.

27. To CGC's knowledge, no Notice of Exclusive Control has been issued to Citi. If one had been, CGC should have received it contemporaneously, along with EPA's written determination and notice that EPA has initiated action under 2 CFR 200.339 to suspend or terminate CGC's grant agreement, but CGC has not received either. Indeed, the Terms and Conditions of CGC's grant agreement explain that "[t]he written determination and finding and a copy of the Notice of Exclusive Control shall be sent to [CGC] when the Notice of Exclusive Control is furnished to [Citi]," and go on to state that "EPA and [CGC] have mutually agreed *only* to the specific process outlined in this term for furnishing a Notice of Exclusive Control instruction to [Citi]."

---

[3] An amendment to the ACA added a proviso (not relevant to the claims) that "after the delivery of a Notice of Exclusive Control, [Citi] shall continue to disburse funds and financial assets associated with financial obligations 'properly incurred' by [CGC] prior to the issuance of, but not in anticipation of, a delivery of a Notice of Exclusive Control, in [CGC's] 'Reserve' Account pursuant to Account Directions originated by [CGC] except for any specific funds or financial assets, identified by [the EPA] in the applicable Notice of Exclusive Control as not being 'properly incurred' by [CGC] in accordance with 2 CFR 200.343."

28. Nor, to CGC's knowledge, has the EPA issued the required written determination that CGC failed to comply with the terms and conditions of the Grant Agreement to such a substantial extent that performance is "materially impaired" or that there is "adequate evidence of waste, fraud, material misrepresentation of eligibility, or abuse."

29. Nevertheless, since at least February 18, 2025, Citi has frozen CGC's funds and the funds of its Subgrantees in their respective Accounts with Citi, provided no justification to CGC, and refused to comply with duly issued instructions directing the disposition of funds and financial assets in CGC's Accounts. This has impaired and will continue to impair CGC's ability to carry out its mission as mandated by Congress.

30. Citi's sole public justification for failing to comply with CGC's instructions is that it "has been working with the federal government in its efforts to address government officials' concerns regarding this federal grant program," but that is not a valid basis or justification to excuse performance under the plain terms of the ACA.

31. With no legal or factual basis to justify its actions, Citi's freezing of CGC's funds constitutes an intentional and wrongful breach of its obligations under the ACA and a conversion of the Accounts and the funds therein.

***The Terms Of The Subgrantee Account Control Agreements***

32. Like CGC's ACA, each Subgrantee ACA was executed among the respective Subgrantee, as Pledgor; CGC, as Secured Party; and Citi, as Bank. The Subgrantee ACAs were executed between January 14 and January 28, 2025.

33. Sections 1 and 2 of the Subgrantee ACAs are functionally identical to the same sections contained in CGC's ACA with the EPA and Citi. Namely, Citi must honor each

Subgrantee's instructions directing the disposition of funds and financial assets in their accounts unless Citi receives a Notice of Exclusive Control from CGC (rather than the EPA).

34. The only difference is in the structure of the Subgrantee ACAs: the EPA is not a party to these agreements. Instead, CGC is the Secured Party under the Subgrantee ACAs vested with the authority to issue a Notice of Exclusive Control, and in order to issue a Notice of Exclusive Control, CGC must issue a written determination either that the Subgrantee:

> has failed to comply with the terms and conditions of the Subaward Agreement, and that noncompliance is substantial such that effective performance of the Subaward Agreement is Materially Impaired or there is adequate evidence of Waste, Fraud, or Abuse or material misrepresentation of eligibility status, and that the Secured Party has initiated action under 2 CFR 200.339, or 2 CFR 200.332(d) or (i), to wholly or partly suspend or terminate the Subaward Agreement as authorized in the terms of the Subaward Agreement or applicable provisions of 2 CFR Part 200, . . . or, . . . [a]nother condition constituting a default in the Subaward Agreement has occurred and is continuing.

35. Citi may refuse to disburse funds to a Subgrantee only if CGC issues such a notice to Citi, but CGC has issued no such notices. This has impaired and will continue to impair the ability of CGC's Subgrantees to carry out the mission as mandated by Congress.

36. As noted, Citi has failed to comply with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts as well, and this freezing also amounts to an intentional and wrongful breach of the Subgrantee ACAs.

## FIRST CAUSE OF ACTION
### Breach of Contract (ACA)

37. Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

38. The ACA is a valid agreement between CGC, the EPA, and Citi. CGC has fully performed all its obligations under the ACA and otherwise.

39. Citi has a duty under the ACA to "comply with all instructions, notifications, and entitlement orders the Bank receives directing the disposition of funds and financial assets in the Accounts."

40. Since February 18, 2025, Citi has declined to abide by any such instruction from CGC, and is also refusing to confirm that it will comply with CGC's instructions despite being asked multiple times. CGC's Accounts at Citi are currently frozen.

41. Citi has no legal or factual basis for its freeze of CGC's accounts or its failure to comply with CGC's instructions.

42. The EPA has not notified CGC of an intention to exercise exclusive control over any of CGC's Accounts, nor has it provided Citi with a Notice of Exclusive Control. The EPA has not issued "a written determination and finding that [CGC] has failed to comply with the terms and conditions of the Grant Agreement, and that noncompliance is substantial such that effective performance of the Grant Agreement is materially impaired or there is adequate evidence of waste, fraud, material misrepresentation of eligibility status, or abuse, and that [EPA] has initiated action under 2 CFR 200.339 to wholly or partly suspend or terminate the Grant Agreement."

43. Citi has breached the ACA by freezing CGC's Accounts and failing to comply with instructions from CGC directing the disposition of funds and financial assets in CGC's Accounts. CGC has suffered, and will continue to suffer, injury as a direct result of Citi's breach.

44. CGC is entitled to an injunction and order mandating that Citi specifically perform its obligations under the ACA, including Section 2 as amended.

45. CGC is further entitled to a declaration, under 28 U.S.C. § 2201, that (a) Citi's freeze of CGC's Accounts and failure to comply with CGC's instructions are a breach of the ACA, (b) Citi must abide by all instructions issued by CGC until and unless a Notice of Exclusive Control

issues, and (c) "working with the federal government in its efforts to address government officials' concerns regarding this federal grant program" is not a justification for failure to adhere to the ACA.

## SECOND CAUSE OF ACTION
### Conversion

46. Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

47. In accordance with the ACA, CGC has a superior legal right to possess and control the disposition of funds and financial assets held in its Accounts at Citi.

48. Citi has wrongfully and intentionally exercised dominion or control over CGC's funds in CGC's Accounts without CGC's consent, including by failing to comply with CGC's valid instructions directing the disposition of funds and financial assets in CGC's Accounts, without any lawful justification.

49. Citi has substantially or permanently interfered with CGC's property rights, including by failing to comply with CGC's valid and lawful instructions.

50. Citi's actions have caused injury to CGC and the Subgrantees.

51. CGC is entitled to an injunction and order mandating that Citi cease its wrongful retention of the funds in CGC's Accounts resulting from its failure to comply with CGC's valid and lawful instructions.

52. Under 28 U.S.C. § 2201, CGC is further entitled to a declaration that Citi's failure to comply with the valid and lawful instructions of CGC directing the disposition of funds and financial assets in CGC's Accounts constitutes a conversion of CGC's Accounts and the funds in those Accounts.

## THIRD CAUSE OF ACTION
### Replevin

53. Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

54. CGC has an immediate and superior legal right to direct the disposition of funds and financial assets in its Accounts, and to direct the disposition of any funds and financial assets as instructed to Citi thereafter.

55. Citi has wrongfully detained the funds in CGC's Accounts by unlawfully failing to comply with CGC's valid and lawful instructions directing their disposition.

56. Citi's actions have caused injury to CGC and the Subgrantees.

57. CGC is entitled to an injunction and order mandating that Citi cease its wrongful detention of CGC's Accounts, and the funds therein, as a result of its failure to comply with CGC's valid and lawful instructions directing the disposition of funds and financial assets in CGC's Accounts.

## FOURTH CAUSE OF ACTION
### Declaratory Judgment and Breach of Contract (Subgrantee ACAs)

58. Plaintiff repeats and incorporates by reference each and every allegation in the preceding paragraphs as if set forth fully herein.

59. A controversy exists between the parties as to the rights of access to funds held in Subgrantee accounts at Citi under Subgrantee ACAs.

60. The Subgrantee ACAs are valid agreements between CGC, Citi, and the Subgrantees. CGC has fully performed all its obligations under the Subgrantee ACAs and, on information and belief, so have the Subgrantees.

61. Citi has a duty under the Subgrantee ACAs to comply with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, and also to abide by any Notice of Exclusive Control that may be issued by CGC, as Secured Party.

62. Citi has refused to abide by valid and lawfully issued instructions issued by CGC's Subgrantees.

63. CGC has suffered, and will continue to suffer, injury as a direct result of Citi's breach. These injuries include, but are not limited to, CGC's inability to execute on the activities and goals set forth in its workplan in effect under its grant agreement with EPA through its Subgrantees and CGC's deprivation by Citi of its exclusive right to issue a Notice of Exclusive Control to CGC's Subgrantees.

64. CGC is entitled to a declaration, under 28 U.S.C. § 2201, that (a) Citi's freeze of and failure to disburse funds from the Subgrantee accounts are a breach of contract, (b) Citi must abide by the instructions issued by CGC's Subgrantees and any Notice of Exclusive Control that CGC may issue, and (c) "working with the federal government in its efforts to address government officials' concerns regarding this federal grant program" is not a justification for failure to adhere by the terms of the Subgrantee ACAs.

**PRAYER FOR RELIEF**

WHEREFORE, CGC respectfully requests that the Court enter judgment as follows:

a. Declaring that Citi's freeze of CGC's Accounts, and failure to comply with valid and lawful instructions from CGC directing the disposition of funds and financial assets in CGC's Accounts, constitutes a breach of the ACA and a conversion of CGC's Accounts and the funds therein;

b. Declaring that Citi's freeze of the Subgrantees' accounts, and failure to comply with valid and lawful instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, constitutes a breach of the Subgrantee ACAs;

c. Enjoining and ordering Citi to cease wrongfully detaining CGC's funds by failing to comply with CGC's valid and lawful instructions directing the disposition of funds and financial assets in CGC's Accounts, and directing Citi to specifically perform its contractual obligations under the ACA, including by complying with CGC's valid and lawful instructions, both with respect to CGC's previously submitted instructions and any future instructions;

d. Enjoining and ordering Citi to specifically perform its contractual obligations under the Subgrantee ACAs, including by complying with instructions from the Subgrantees directing the disposition of funds and financial assets in their accounts, both with respect to the Subgrantees' previously submitted instructions and any future instructions, and any Notice of Exclusive Control that CGC may issue in the future; and

e. Granting CGC such other and further relief as the Court may deem just and equitable.

DATED: March 10, 2025
New York, New York

HOLWELL SHUSTER & GOLDBERG LLP

By:   */s/ Vincent Levy*
Vincent Levy
Kevin D. Benish
Patrick J. Woods
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
vlevy@hsgllp.com

*Attorneys for Plaintiff*
